[Cite as *State v. Young*, 2017-Ohio-9028.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-1144 |
| v. | : | (C.P.C. No. 13CR-6391) |
| Clifford Young, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 14, 2017

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Sheryl L. Prichard,* for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Timothy Young,* Ohio Public Defender, and *Terrence K. Scott,* for appellant. **Argued:** *Terrence K. Scott.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Clifford Young, Jr., appeals from a December 18, 2015 judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery with a firearm specification, robbery with a firearm specification, felonious assault with a firearm specification, and having weapons while under disability ("WUD"). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 4, 2013, appellant was indicted for aggravated robbery with a firearm specification (Count 1 of the indictment), robbery with a firearm specification (Count 2 of the indictment), robbery with a firearm specification (Count 3 of the indictment), felonious assault with a firearm specification (Count 4 of the indictment),

and having weapons while under a disability (Count 5 of the indictment). (Dec. 4, 2013, Indictment.)

{¶ 3} The case proceeded to trial in September 2015. However, the jury was unable to reach a verdict and the trial court declared a mistrial. (Sept. 14, 2015 Entry.) On November 9, 2015, a second trial commenced. As pertinent to this appeal, the facts are as follows. The victim, B.B., testified that she worked as a prostitute. Periodically, she would come from Lorain County to the Columbus area and rent a hotel room for up to one week to provide sex services. In January 2013, B.B. rented a room for a one-week stay at the Red Roof Inn on Brice Road in Reynoldsburg. During the early morning hours of January 11, 2013, B.B. was renting room 231 when she received a call from a person she believed to be a black male inquiring about her services. The two exchanged five phone calls between 1:38 a.m. and 2:22 a.m. Eventually, a black man arrived at her hotel room that she had never seen before and whose voice sounded like the man that called her. She identified appellant as the man who called her and as her assailant.

{¶ 4} B.B. testified regarding the altercation as follows. Appellant entered the room and looked around to ensure no one else was in the room. He asked for a cigarette and she gave him one. Appellant pulled out a gun and ordered her to give him her money. He cocked the gun and, when she realized he was serious, she grabbed the gun from him and went into the fetal position with the gun underneath her arm. Appellant then got on top of her and began punching her. She attempted to pull the trigger of the gun but it did not fire. Appellant hit and bit her, broke some of her fingernails, and tried to burn her in the face or eyes with the cigarette, but she was able to block it between her shoulder, chin, and neck. At this point, appellant was able to gain control of the gun and he used it to strike B.B. repeatedly, even after she begged for him to stop. B.B. told appellant where the money was located and he took $811, her cellphone, and a computer. He left the room for a short time and returned to take additional items. Eventually he left for good and B.B. called the Columbus Police Department for help at 2:32 a.m.

{¶ 5} The police and emergency squad arrived and she was taken to Grant Hospital. B.B. suffered numerous lacerations, a broken nose, a bite mark on her right arm, and a cigarette burn. She required stitches, plastic surgery, and had a metal pin placed in her finger. B.B. was released from the hospital on the evening of January 12, 2013 with a

discharge diagnosis of a concussion, nasal fracture, a closed fracture of the distal phalanx of the finger, and facial cuts.

{¶ 6}   Columbus Police Officer Ryan Van Fossan testified that he was dispatched to the scene at 2:32 a.m. When he arrived B.B. was covered in blood and he did not observe any indications that she was under the influence of drugs or alcohol. B.B. described her assailant as a black male weighing approximately 250 pounds. Detective Kevin Jackson investigated the crime scene and noted blood splatter on the mirror.  The detective also did not see any evidence of illegal drug use or drug paraphernalia in the room.

{¶ 7}   Columbus Police Department investigators swabbed the hotel room telephone, collected fingernail tips and a partial cigarette butt, and submitted a DNA test request for the same. The telephone swab DNA was consistent with B.B. (State's Ex. E5.) DNA from the fingernail tips matched B.B. and at least one other person, however, the appellant was excluded as a contributor. (State's Ex. E5.)  DNA from the cigarette butt matched appellant. (State's Ex. E2.)

{¶ 8}   On October 27, 2013, Detective Jason Wood acted as a blind administrator in showing a photo lineup to B.B. As such, he did not know which of the six black males pictured was the suspect. B.B., as well did not know which of the men pictured, if any, had been identified as a suspect. At this time, she did not know appellant's name, nor that his DNA had been matched to the cigarette.

{¶ 9}   When Detective Wood administered the photo lineup, he did not realize that two of the photos, Nos. 4 and 6, were the same person, albeit different photos. Appellant's photo, No. 3, was only featured once. The detective testified that placing two of the same people in the lineup was a mistake that should have been caught by the computer system that generates the photo arrays. He also testified that he could not tell that they were the same person by looking at the array. B.B. never considered the photos in position Nos. 4 or 6 as possibilities to be the perpetrator. She focused on photos of two others, Nos. 2 and 3. B.B. told police she was 95 percent sure that No. 3, who was appellant, was the perpetrator. She noted that appellant looked heavier in the photo than he did when she saw him.

{¶ 10} B.B. also told investigators that the perpetrator had called her from a phone number starting with 614-44.  Because her cellphone was stolen in the robbery, she could

not look at it to find the remaining 4 numbers. Detective James Howe presented testimony derived from unauthenticated AT&T cellphone records. The state did not seek to introduce the AT&T records themselves but, rather, the analysis of information received from AT&T by way of Detective Howe's "Cellular Review." (State's Ex. I.) Detective Howe was admitted as an expert in the field of cellular phones, forensics, and analysis, without objection. Trial counsel did not object to the introduction of the records, or Detective Howe's Cellular Review, i.e., State's Ex. I.

{¶ 11} Detective Howe described that a court order for B.B.'s cellphone records was obtained and, once received, he analyzed the records, as well as the area, and prepared a report. The information from B.B.'s cellphone records demonstrated that B.B. did receive several calls from a number starting 614-44, specifically 614-441-2949 ("target number"), just as she had told detectives. Detective Howe's Cellular Report stated that during the date and time of the incident the target phone accessed AT&T towers which were in the vicinity of the crime scene and there were five contacts between the target phone and B.B.'s phone between 1:38 a.m. and 2:22 a.m. on January 11, 2013.

{¶ 12} The state readily admitted throughout the trial, starting with opening statements, that the AT&T records did not connect appellant to this phone, i.e., nothing in the AT&T records named appellant as a liable party or user of the phone. Detective Howe testified that the AT&T records showed the liable party as AT&T with a Georgia address and the user as AT&T with a Morse Road, Columbus, Ohio address. However, as stated above, B.B.'s testimony linked that phone number to appellant.

{¶ 13} Appellant agreed to the admission of the cell phone analysis without objection initially but later asked the court to clarify for the jury that the phone was never linked by the AT&T records to appellant. The judge gave that following clarifying instruction to the jury:

> Before we get to closing arguments there's just two sort of a limiting instruction that I just want to state to you as you are, again, considering closing arguments and ultimately evaluating the evidence.
>
> You saw testimony regarding the cellular phone. In the evidence it is indicated suspect phone. Okay. Suspect phone refers to the phone number which was received by [B.B.].

> You also saw testimony regarding suspect home. Suspect home refers to the home of the defendant and there's not that the suspect home and suspect phone are connected, okay? There's not testimony in the record in that regard.

(Tr. at 817-18.)

{¶ 14} Appellant testified and told a completely different story. He admitted to being a drug dealer. He testified that on January 10, 2013, at around 8:00 p.m., which is approximately six and one-half hours prior to the assault and robbery, he received a call from a customer, a prostitute named Alex, who wanted to buy drugs. Alex asked him to meet her at the Red Roof Inn on Brice Road in room 231. When he arrived and entered the room, in addition to his customer Alex, there was B.B. and a man, neither of whom appellant knew or had previously seen. Appellant stated that he was in the room for ten minutes and smoked a cigarette that he extinguished in a soda cap, thereby explaining how his DNA was on a cigarette in B.B.'s room. He claims that he sold Alex two Percocet, crack, and then departed the room and did not return. Appellant testified that the 614-441-2949 was not his phone and that he made no calls to B.B. He denied hitting, beating, or robbing her.

{¶ 15} Appellant was found guilty of aggravated robbery with a firearm specification (Count 1), robbery with a firearm specification (Count 2), felonious assault with a firearm specification (Count 4), and having weapons while under disability (Count 5). The court merged Counts 1 and 2, and the state elected that appellant be sentenced on Count 1. Appellant was sentenced to 17 years in prison to be served consecutively to his sentences in three other cases. (Dec. 18, 2015 Jgmt. Entry.)

## II. ASSIGNMENTS OF ERROR

{¶ 16} Appellant appeals, assigning the following errors:

> [I.] The State failed to establish operability to support the firearm specifications. Therefore, the convictions and sentences for the firearm specifications violated Clifford L. Young, Jr.'s rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

> [II.] The State failed to establish that a firearm was present or operability to support the firearm specification(s) related to the second altercation. Therefore, the convictions and

sentences for the specification(s) related to the second assault violated Clifford L. Young, Jr.'s rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

[III.] The trial court committed plain, reversible error when it admitted unauthenticated cellphone records when that testimonial evidence was key in placing Clifford L. Young, Jr. at the scene of the crime, in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution.

[IV.] Clifford L. Young, Jr. was denied the effective assistance of counsel at his trial, to which he was entitled under the Sixth and Fourteenth Amendments to the United States Constitution. Mr. Young's counsel failed to object to Det. Howe's testimony about unauthenticated cellphone records. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.E.2d 177 (2004).

[V.] The State's repeated mischaracterization of the AT&T-owned cellphone denied Clifford Young, Jr. a fair trial and due process of law, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

[VI.] The trial court committed plain error when it failed to instruct the jury on photo-lineup noncompliance as required by R.C. 2933.83(C)(3), in violation of Clifford L. Young, Jr.'s Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

[VII.] Trial Counsel provided ineffective assistance of counsel by failing to request an R.C. 2933.83(C)(3) jury instruction. Sixth and Fourteenth Amendments, United States Constitution, and Article I, Section 10 of the Ohio Constitution.

## III. ASSIGNMENTS OF ERROR ONE AND TWO

### A. Sufficient evidence supports the firearm specifications

{¶ 17} In assignment of error one, appellant argues that the state failed to present sufficient evidence to prove operability of the firearm to support the firearm

specifications. The issue of sufficiency of the evidence presents a purely legal question for the court regarding the adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The Supreme Court has provided the following test for judging the sufficiency of the evidence:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 18} A firearm specification may be proven without the actual presentation of direct or scientific evidence that the firearm was operable. The Supreme Court has stated that "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." *Thompkins* at 383-84.

{¶ 19} In *State v. Pride*, 10th Dist. No. 11AP-55, 2011-Ohio-6055, ¶ 19-20, this court held that firearm operability could be inferred where the testimony established that the suspect held a gun to a driver's head, hit him in the face with the gun, demanded the driver exit the car, and looked like he was going to shoot the victims. *See also, State v. Dutton*, 10th Dist. No. 09AP-365, 2009-Ohio-6120 (firearm operability inferred where the record contained evidence that the defendant barged into a house, pointed a gun at the victim, and then began to beat him with it).

{¶ 20} In the present action, B.B. testified that appellant pulled a gun out, demanded money, and then repeatedly struck her with the gun in the head, shoulders and upper body in furtherance of the aggravated robbery and felonious assault. (Nov. 12, 2015 Tr. at 292-95.) In addition, Detective Jackson testified that the blood splatter on the mirror in the hotel room was consistent with someone being "pistol whipped." (Nov. 10, 2015 Tr. at 151.) As such, sufficient evidence exists to support the guilty verdicts as to the firearm specifications. Appellant's first assignment of error is overruled.

### B. No second assault

{¶ 21} In assignment of error two, appellant argues that the state failed to establish that a firearm was present or operable in order to support the firearm specification(s) related to the second altercation and, therefore, the convictions and sentences for the specification(s) related to the second assault violated appellant's rights. The state did not indict appellant for two assaults. Appellant was convicted of one count of felonious assault. Therefore, there is no conviction that relates to a second assault to consider. Appellant's second assignment of error is overruled.

## IV. ASSIGNMENT OF ERROR THREE—Cellphone Records—No Plain Error

{¶ 22} Appellant argues that the trial court committed plain, reversible error when it admitted unauthenticated cellphone records. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. *State v. Hill*, 92 Ohio St.3d 191, 200 (2001). Second, the error must be plain, i.e., an error must be an "obvious" defect in the trial proceedings. *State v. Sanders*, 92 Ohio St.3d 245, 257 (2001). Third, the error must have affected substantial rights, i.e., the trial court's error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). The Supreme Court has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*

{¶ 23} The Supreme Court has included unauthenticated cellphone records into the category of testimonial statements that can violate Confrontation Clause rights. *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 2, 4. The *Hood* court held that cellphone and other business-type records, "without * * * authentication, cannot be considered nontestimonial." *Id.* at ¶ 2. In the case of cellphone records, when no foundation is laid by a custodian of the records or any other qualified witness that the records meet the requirements of Evid.R. 803(6), the records are testimonial, and "the admission of the records in this case was constitutional error." *Id.* at ¶ 42. However, the *Hood* court also found that the admission of cellphone records in that case was harmless error. *Id.* at ¶ 50. Where constitutional error in the admission of evidence is extant, such

error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. *See also, Hood* at ¶ 43.

{¶ 24} First we note the state did not seek to introduce the AT&T records, but rather the analysis prepared by Detective Howe, which was based on his expertise and the records received from AT&T. As such, we construe appellant's third assignment of error as challenging the admission of Detective Howe's "Cellular Review." (State's Ex. I.)

{¶ 25} Appellant never questioned the authenticity of the records. Defense counsel had the AT&T records as part of discovery. The state had subpoenaed the AT&T keeper of records. Defense counsel even subpoenaed an employee of AT&T. As this was the second trial, counsel was well-familiar with the records and any issues they might present. Appellant agreed to the admission of the cell phone analysis without objection initially but later asked the court to clarify for the jury, which the trial court did, that the phone was never linked by the AT&T records to appellant. (Tr. at 800-03.)

{¶ 26} Under the circumstances, we do not find plain error. There was no obvious defect in the trial proceedings, nor do we find that the admission of State's Ex. I affected the outcome of the trial, or caused a manifest miscarriage of justice. In addition, even if we were to find error, such error would be harmless.

{¶ 27} Since the AT&T cellphone records never linked phone number 614-441-2949 to appellant, it is unlikely that the jury relied on the testimony to convict, especially in light of B.B.'s credible and consistent testimony regarding her activities, identifying her assailant's phone number, identifying appellant in the photo lineup prior to her knowing that his DNA was on the cigarette, identifying him in court, and that there was no evidence of illegal drug use in the same hotel room in which appellant testified he had sold multiple drugs, coupled with appellant's DNA on the cigarette that B.B. testified burned her neck.

{¶ 28} This case came down to credibility. The jury believed B.B. The testimony of one witness, if believed by the jury, is enough to support a conviction. *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. As in *Hood* at ¶ 43 and 50, we conclude that the admission of the cell phone records as incorporated into State's Ex. I did not contribute to appellant's conviction and their admission was harmless beyond a reasonable doubt. Appellant's third assignment of error is overruled.

**V. ASSIGNMENT OF ERROR FIVE—No Prosecutorial Misconduct**

{¶ 29} Appellant argues that the state's repeated mischaracterization of the AT&T-owned cellphone, by repeatedly referring to the cellphone as the suspect phone, denied appellant a fair trial and due process of law. Additionally, through an exhibit based on the unauthenticated cellphone records, the state presented the "Cellular Review" that referred to appellant's home address as "Suspect Home Address."

{¶ 30} Whether a prosecutor's remarks constitute misconduct depends upon (1) whether the remarks were improper and, (2) if so, whether the remarks prejudicially affected the accused's substantial rights. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 163. The issue is whether the defendant received a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24 (1987). The conduct of a prosecuting attorney during a trial cannot be made a ground for error unless the conduct deprived the defendant of a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

{¶ 31} Appellant argues that the prosecutor mischaracterized the evidence by calling the cellphone number that called B.B. the suspect phone. However, this characterization was accurate as B.B. indicated that the person who used that cellphone number was the person who attacked her, i.e., the appellant. The state readily admitted throughout the trial, starting with opening statements, that the phone could not be connected to appellant by the AT&T records. However, B.B.'s testimony linked the cellphone to appellant.

{¶ 32} Appellant asked the court to clarify for the jury that the phone was never linked to appellant by the AT&T records and that the word "suspect" in "phone" and "home" did not link appellant. The judge so instructed the jury as stated above. The jury is presumed to follow the court's instructions. *State v. Loza*, 71 Ohio St.3d 61, 75 (1994). As such, the prosecutor's conduct was not prejudicial. Any claimed error did not affect the outcome of the trial. Appellant's fifth assignment of error is overruled.

**VI. ASSIGNMENT OF ERROR SIX—Photo Lineup—No Plain Error**

{¶ 33} Appellant argues that the trial court committed plain error when it failed to instruct the jury on photo-lineup noncompliance as required by R.C. 2933.83(C)(3). Appellant did not request that the trial court instruct the jury pursuant to R.C. 2933.83(C)(3). Because appellant did not object to the jury instructions, he has waived all but plain error.

{¶ 34} R.C. 2933.83(B) requires law enforcement agencies to adopt specific procedures for conducting line-ups:

> Prior to conducting any live lineup or photo lineup * * *, any law enforcement agency or criminal justice entity in this state that conducts live lineups or photo lineups shall adopt specific procedures for conducting the lineups.

{¶ 35} The remedy for failure to comply with said procedures is a jury instruction:

> [T]he "penalty" for failure to comply with R.C. 2933.83 is not suppression, but that "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification." R.C. 2933.83(C)(3).

*State v. Stevenson*, 2d Dist. No. 24821, 2012-Ohio-3396, ¶ 16. Noncompliance with R.C. 2933.83(B) alone is insufficient to warrant suppression of evidence. *State v. Ruff*, 1st Dist. No. C-110250, 2012-Ohio-1910, ¶ 8. The failure to strictly comply with R.C. 2933.83 does not render the pretrial identification procedure per se impermissibly suggestive. Rather, all facts and circumstances must be considered. *See State v. Murphy*, 91 Ohio St.3d 516, 534 (2001).

{¶ 36} This court recently considered this very issue in a case directly on point, *State v. Lytle*, 10th Dist. No. 15AP-748, 2016-Ohio-3532, *discretionary appeal not allowed*, 147 Ohio St.3d 1474, 2016-Ohio-8438, and found no plain error:

> Appellant contends that evidence of a failure to comply with the provisions of R.C. 2933.83 was presented at trial in order to trigger a jury instruction. Specifically, appellant points to Bowman's and Kirby's testimonies as evidence that including two photographs of the same person violated the Columbus police lineup procedure. It is true that Bowman expressed his own opinion that including two photographs of the same person was a statutory violation. However, the minimum statutory requirements and definition of photo array in R.C. 2933.83 do not address whether five distinct people must be included in the array alongside the defendant. In addition, testimony reflecting the officers' belief that the duplication never should have occurred falls short of establishing a procedure against photo duplication "adopted" by the Columbus police department under R.C. 2933.83. R.C. 2933.83(C).

In other words, whether or not a violation of R.C. 2933.83 occurred is not obvious from record evidence. As such, we cannot say any possible defect in not including a jury instruction, pursuant to R.C. 2933.83(C)(3), rises to the level of "plain" error within the meaning of Crim.R. 52(B). *Barnes* at 28. *See also Thompson* at ¶ 24 (finding, in the context of a court's failure to impose a jury instruction under R.C. 2933.83(C)(3), no plain error occurs where insufficient record evidence demonstrates noncompliance with the statute).

We likewise cannot say that any possible error in not including the R.C. 2933.83(C)(3) jury instruction affected the outcome of the trial. The jury heard extensive testimony and cross-examination regarding the photo array identifications and the two photographs of the same person. The witnesses testified that they did not know that two photographs of the same person were placed in the photo array and that it did not affect their selections of appellant in the photo array, and all identified appellant in court as the person who robbed TK Sports Bar. * * *.

Furthermore, the trial court gave the jury general instructions regarding the value of identification testimony and credibility of identification witnesses, which specifically asked the jury to consider whether each identification witness had the opportunity to make a reliable observation and specified that the jury could take into account the strength of the identification and the circumstances under which the identification was made. Such a general credibility instruction allows a jury to assess the value of photo identification testimony. *Thompson* at ¶ 24 (finding no plain error occurred in trial court's failure to give a R.C. 2933.83(C)(3) instruction where jury received a general credibility instruction and heard sufficient testimony regarding the identification); * * * . Therefore, appellant's substantial rights were not affected, and for all the above reasons, we find no plain error.

*Id.* at ¶ 76-79.

{¶ 37} Here, as in *Lytle*, there was no evidence of the failure to comply with any procedure adopted by the Columbus police, or any evidence of failure to comply with any section of R.C. 2933.83. As such, the trial court was not required to give a jury instruction pursuant to R.C. 2933.83(C)(3). The jury was well aware of the issue with the photo array and defense counsel extensively cross-examined B.B. and Detective Wood on this issue. In addition, the trial court judge did give the general jury instruction regarding the value of

identification testimony and credibility of identification witnesses. (Nov. 18, 2015 Tr. at 920-22.)  B.B. identified appellant in court and in the photo array. B.B. never commented on the two photos, but focused on photos of two others, and did not notice that the same person (not appellant) was featured twice. As such, any possible error did not affect the outcome of the trial.  We find no plain error.  Appellant's sixth assignment of  error is overruled

## VII.  ASSIGNMENTS  OF  ERROR  FOUR  AND  SEVEN—No  Ineffective Assistance of Counsel

{¶ 38} Appellant argues in the fourth assignment of error that he was denied the effective assistance of counsel when counsel failed to object to Detective Howe's testimony regarding unauthenticated cellphone records. Appellant argues in the seventh assignment of error that trial counsel provided ineffective assistance of counsel by failing to request an R.C. 2933.83(C)(3) jury instruction.

{¶ 39} Counsel is ineffective if counsel's performance is objectively unreasonable, and if counsel's deficient performance substantially prejudices the defendant's trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* at 687. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### A.  Assignment of error four

{¶ 40} As stated above, the state did not offer the testimony of an AT&T custodian of records that could vouch for the business records accuracy or veracity. Instead, the state offered the testimony of Detective Howe, who presented his "Cellular Review" based in part on the AT&T records.

{¶ 41} We note that it is difficult to make an ineffective assistance claim in a direct appeal because there is usually very little, if any, information in the record as to counsel's reasoning. Trial counsel had the AT&T records as part of discovery. Appellant's counsel had even subpoenaed an employee of AT&T. As this was the second trial, counsel was very familiar with the records and any issues they might present. Counsel vigorously cross-examined the experts at both trials. Had defense counsel objected to Detective Howe's report based on AT&T's records, the state could have easily called the keeper of records

who had been subpoenaed. Counsel likely realized no purpose would be served by cross-examining the records keeper and appellant does not suggest what testimony might have been elicited to affect the outcome. Counsel was not ineffective.  Appellant's assignment of error four is overruled.

### B.  Assignment of error seven

{¶ 42} Appellant argues that R.C. 2933.83(C)(3) requires a jury instruction when eyewitness identification procedures are violated and that because trial counsel was aware of the lack of compliance, trial counsel should have requested an R.C. 2933.83(C)(3) jury instruction.

{¶ 43} In order for the trial court to have been required to provide the jury instruction, appellant first must show that there was evidence of a failure to comply with a procedure that had been adopted by the Columbus police. Because there was no evidence of the failure to comply with any procedure adopted by Columbus police, nor any evidence of failure to comply with any section of R.C. 2933.83, the trial court was not required to give a jury instruction pursuant to R.C. 2933.83(C)(3).  Again, appellant cannot show that the outcome of the trial would have been different had counsel requested said jury instruction. As such, counsel was not ineffective. Appellant's seventh assignment of error is overruled.

## VIII.  DISPOSITION

{¶ 44} Having overruled appellant's seven assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

_____