[Cite as *State v. Shepherd*, 2021-Ohio-4230.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29123 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-4172 |
| | : | |
| JESSE LAMAR SHEPHERD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of December, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1717 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Jesse Lamar Shepherd appeals from a judgment of the Montgomery County Court of Common Pleas. After a jury found Shepherd guilty of two counts of attempted aggravated murder, one count of attempted murder, two counts of aggravated robbery, two counts of felonious assault, and a single count of failure to comply with the order or signal of a police officer, the trial court sentenced him to 45 to 50.5 years of incarceration. Shepherd raises two assignments of error. First, he argues that the trial court erred by overruling his motion to suppress. This assignment of error will be overruled. Second, Shepherd asserts, and the State agrees, that the trial court erred by denying his right to allocution at sentencing. That assignment of error will be sustained. The judgment of the trial court will be reversed in part and remanded for the limited purpose of resentencing. In all other respects, the trial court's judgment will be affirmed.

I.     Facts and Procedural History

{¶ 2} Between 1:00 and 1:30 in the afternoon on December 18, 2019, Akil Kontar and his fiancée, Joi White, were packing up to leave the Double Tree Hotel on Prestige Place in Miami Township. White pulled their car around to the front of building near the lobby and waited inside the hotel while Kontar worked to place their young daughter's car seat into the vehicle. Once the car seat was in place, White returned to the car with their daughter and buckled her in while Kontar threw some trash away in a nearby bin. As White finished getting her daughter situated, she heard a shuffling of feet on the ground and turned around in time to see Shepherd pointing a gun at Kontar's head. According to White's testimony at trial, she saw Shepherd shoot Kontar in the head at point-blank

range.

{¶ 3} After seeing her fiancé get shot, White fell to the ground. She testified that when she looked up, Shepherd was standing over her pointing the gun at her head. Before any harm came to her, though, White was able to get up and dash to the lobby, leaving her two-year-old daughter in the car and Kontar bleeding on the ground. She further testified that she watched Shepherd grab a bag out of her car and then get into a vehicle of his own and speed away. After the threat was gone, White ran back out to the car where she, to the best of her abilities, tended to Kontar. A hotel employee grabbed the child and took her inside.

{¶ 4} Police officers soon arrived, and White was able to inform them that the person they would be looking for was Jesse Shepherd and that he was driving a tan Z71 Chevy truck. White explained that she knew the assailant's identity because he had been in a previous relationship with one of her family members, and she was able to show officers a picture of him on Facebook.

{¶ 5} Kontar was taken to the hospital; he survived his injuries, although he is paralyzed on his left side.   Meanwhile, officers began their search for Shepherd and the Chevy truck he was driving. After a brief chase, Shepherd crashed his truck and was apprehended.

{¶ 6} Back at the hotel, Detective Comer put together a photo array to administer to witnesses and enlisted the help of Officer Beatty to show the photos to White and two Double Tree employees who observed the incident. Two of the three witnesses picked out Shepherd as the shooter.

{¶ 7} On January 28, 2020, Shepherd was indicted on two counts of attempted

aggravated murder, one count of attempted murder, two counts of aggravated robbery (deadly weapon), one count of aggravated robbery (serious harm), one count of felonious assault (deadly weapon), one count of felonious assault (serious harm), and one count of failure to comply with the order or signal of a police officer. With the exception of the failure to comply count, all the charges had a three-year firearm specification attached.

{¶ 8} On March 25, 2020, Shepherd filed a motion to suppress seeking, among other things, to exclude witness identifications obtained using the photo arrays. The trial court held a hearing and overruled the motion; the case later proceeded to trial. After three days of trial testimony from 20 witnesses and seeing dozens of exhibits, the jury convicted Shepherd of all counts and specifications. The court then sentenced Shepherd to an aggregate term of 45 to 50.5 years of incarceration. The court did not, however, give him an opportunity to speak on his own behalf prior to imposing the sentence.

## II.    Motion to Suppress

{¶ 9} In his first assignment of error, Shepherd argues that the trial court erred when it overruled his motion to suppress the photo lineup and eyewitness identification.

{¶ 10} An appeal from a ruling on a motion to suppress presents a mixed question of facts and law. *State v. Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, ¶ 15 (2d Dist.). When considering a motion to suppress, the trial court takes on the role of trier of fact and is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Turner*, 2015-Ohio-4612, 48 N.E.3d 981, ¶ 10 (2d Dist.). As a result, we must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the

applicable legal standard." *Id.*, quoting *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13. The trial court's application of law to the findings of fact is subject to a de novo standard of review. *Id.*

Photo Array Identification

{¶ 11} Due process may require the suppression of eyewitness pretrial identification when the basis of the identification creates a substantial likelihood that the witness is mistaken, and to prevail on a motion to suppress in this regard, a "defendant must * * * show that the identification procedure was unduly suggestive." *State v. Scott*, 2018-Ohio-198, 104 N.E.3d 143, ¶ 10 (2d Dist.), quoting *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 19. A photo lineup is unduly suggestive if it "steers the witness to one suspect, independent of the witnesses' honest recollection." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208. If the identification procedure was not unduly suggestive, any remaining questions as to the identification's reliability go to its weight, not its admissibility, and no further inquiry is needed. *State v. Dewberry*, 2d Dist. Montgomery No. 27434, 2020-Ohio-691, ¶ 72.

{¶ 12} Conversely, if the defendant demonstrates the pretrial identification was unduly suggestive, "the court must then consider whether the identification, viewed under the totality of the circumstances, was reliable despite the suggestive procedure." *Id.* at ¶ 73. Reliability is the linchpin in determining admissibility. "So long as the identification possesses sufficient aspects of reliability, there is no violation of due process." *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *3 (Feb. 22, 2002).

{¶ 13} R.C. 2933.83 sets out the standards for lineup and photo identification in the criminal context. As applicable to this case, the statute requires that the lineup be

conducted by a "blind administrator," meaning the person conducting the lineup does not know the identity of the suspect. R.C. 2933.83(A)(2). The blind administrator must make a written record that includes: (a) all identification and nonidentification results obtained during the lineup, signed by the eyewitness, including the eyewitnesses' confidence statement made at the time of the identification; (b) the names of all persons present; (c) the date and time of the lineup; (d) any eyewitness identification of one or more "fillers" in the lineup; and (e) the names of the lineup members and other relevant identifying information, and the sources of the photographs or persons used in the lineup. R.C. 2933.83(B)(4)(a)-(e).

{¶ 14} The failure to strictly comply with the requirements is not, by itself, sufficient to suppress the identification. *State v. Stevenson*, 2d Dist. Montgomery No. 24821, 2012-Ohio-3396, ¶ 16. *See also State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 6-8; *State v. Young*, 2017-Ohio-9028, 101 N.E.3d 1056, ¶ 35 (10th Dist.).

{¶ 15} Shepherd raises three concerns about the witness identification process (as it pertains to White) used by law enforcement in this case. The first purported problem he advances is regarding the photo array used by law enforcement. Shepherd alleges that there was ambiguity regarding whether the photographs were in black and white or color, and he contends this ambiguity caused the photo array and, by extension, the identifications, to be unreliable.

{¶ 16} While it is true that Detective Comer testified that he could not remember if White was presented with a black and white or color photo array, there is no evidence or law presented by Shepherd that a black and white photospread is in any way unreliable or unduly suggestive. Granted, a color photo may give a witness more vivid details to help

in identification, but in this case, the record reflects that White knew Shepherd and did not have a difficult time identifying him as the suspect, so any extra benefit a color photograph could have provided was unneeded. Further, the record is not clear whether White did in fact receive a black and white photo array. Consequently, we conclude that even if White were given a black and white photo array, that fact would not lead to the determination that the process was unduly suggestive or unreliable.

{¶ 17} Next, Shepherd asserts that Detective Comer's proximity to the presentations of the photo lineups made the process unduly suggestive. We disagree. Pursuant to the regulations set out in R.C. 2933.83 that a photo array must be administered "blindly," Detective Comer, who knew who the suspect was based on speaking with White, conscripted Officer Beatty (who testified he had no idea who the suspect was) to administer the photo array to the witnesses. Detective Comer did, however, stay in the general vicinity of where the photo lineup was being administered – the café area of the hotel lobby. While the record reflects that Detective Comer was five to seven feet away from the administration of the photo arrays, there is no evidence that there was any communication or contact between the witnesses and him. In fact, Detective Comer specifically testified that he did not communicate with Officer Beatty or the witnesses during the identifications. Based on the record before us, we cannot conclude that the presence of Detective Comer made the photo array identification unduly suggestive or unreliable.

{¶ 18} Finally, Shepherd challenges the reliability of White's identification in the photo lineup, in part because the photo array she used lacked a "confidence statement" as required by R.C. 2933.83.

{¶ 19} The record reflects that the photo identification packet given to White did not include a "confidence statement," and while that omission runs afoul of the statute, it does not support a conclusion that White's identification of Shepherd was unreliable, or that the photo lineup was unduly suggestive.

{¶ 20} As an initial matter, we have previous stated, generally, that violations of R.C. 2933.83 are not independent grounds for suppression. *State v. Harmon*, 2017-Ohio-8106, 98 N.E.3d 1238, ¶ 23 (2d Dist.). Instead, for a violation to rise to the level of being suppression-worthy, a "defendant must * * * show that the identification procedure was unduly suggestive." *Scott*, 2018-Ohio-198, 104 N.E.3d 143, ¶ 10. We do not have that here. Shepherd, in his brief, does not argue that the lack of "confidence statement" made the identification unduly suggestive; he instead contends that White's identification was unreliable without it. The record, however, belies that assertion.

{¶ 21} Detective Comer testified at the suppression hearing that White knew exactly who the shooter (Shepherd) was, immediately identified him, and told him that Shepherd was the father of her niece's child. According to Detective Comer's testimony, White was even able to show him a picture of Shepherd on Facebook. The fact that White was able to identify Shepherd *before* being shown the photo spread cuts against Shepherd's argument that White's identification was unreliable. The fact that the photo array given to White did not have a "confidence statement" attached to it did not make her identification unreliable and did not cause it to be unduly suggestive.

{¶ 22} Shepherd's first assignment of error is overruled.

### III.    Allocution

{¶ 23} In his second assignment of error, Shepherd asserts that the trial court erred

when it did not allow him the opportunity for allocution prior to the imposition of sentence.

{¶ 24} At the disposition, the sentencing court must "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Crim.R. 32(A)(1). The Supreme Court of Ohio has stated that the right to allocution is "much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000). We, too, have weighed in on the matter and noted that "[w]hile the defendant may waive the right of allocution, Crim.R. 32(A)(1) imposes an affirmative duty on the court to speak directly to the defendant on the record and inquire whether he or she wishes to exercise that right or waive it." *State v. Sexton*, 2d Dist. Greene No. 04CA14, 2005-Ohio-449, ¶ 31. Failing to do so is reversible error. *Id.* at ¶ 33.

{¶ 25} In this case, while defense counsel presented mitigating statements on his client's behalf, the trial court failed to offer Shepherd the chance to make a statement of his own – an infringement of Crim.R. 32(A)(1). The State concedes this error. Thus, we must remand the matter to the trial court for resentencing purposes only. Shepherd's second assignment of error is sustained.

## IV.    Conclusion

{¶ 26} The trial court failed to comply with Crim.R. 32(A)(1) by not giving Shepherd his right of allocution.   As such, the judgment will be reversed in part and remanded for resentencing only. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . . . .

TUCKER, P. J. and DONOVAN, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
Kristin L. Arnold
Hon. Richard S. Skelton