[Cite as *State v. Turner*, 2015-Ohio-4612.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26520 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2014-CR-1597 |
| v. | : | |
| | : | (Criminal Appeal from |
| JUSTIN TURNER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 6th day of November, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by DYLAN SMEARCHECK, Atty. Reg. No. 0085249, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ROBERT L. SCOTT, Atty. Reg. No. 0086785, Oldham & Deitering, LLC, 8801 North Main Street, Suite 200, Dayton, Ohio 45415-1380
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Justin Turner appeals from his conviction and sentence

for Possession of a Controlled Substance, Cultivating Marijuana, and Having Weapons

Under Disability. Turner contends that the trial court erred by overruling his motion to suppress the evidence recovered from the search of his car, because the officer did not have a sufficient basis to stop and detain him. Turner also argues that the trial court erred in overruling his motion to suppress the evidence obtained from a search of his home, because probable cause did not exist for the search warrant. The State argues that the officer did have a reasonable suspicion that Turner had committed a traffic offense when his vehicle was stopped, and that probable cause did exist for a search warrant. The State contends that after finding marijuana starter plants and hydroponic equipment supplies in Turner's car, the search warrant for Turner's home was based on the suspicion that further evidence of marijuana cultivation would be found in the home.

{¶ 2} We conclude that the trial court did not err in overruling Turner's motion to suppress evidence. The police officer observed Turner commit a traffic offense, which provided a basis for the traffic stop. The smell of marijuana provided a sufficient basis to search the vehicle, and the result of the vehicle search was sufficient probable cause to issue the search warrant for the house. Therefore, the sole assignment of error is overruled, and the judgment of the trial court is Affirmed.

## I. The Traffic Stop and the Searches

{¶ 3} While traveling southbound on Salem Avenue, Turner was observed traveling at the posted speed limit of 35 miles per hour, but with only one car-length between his vehicle and the vehicle in front of him. The undercover officer who observed Turner called a uniformed patrol officer to make a traffic stop for insufficient space between moving vehicles, a minor misdemeanor, in violation of R.C. 4511.34. The patrol officer followed Turner's vehicle until it turned into, and stopped in, the driveway of

Turner's home on Tennyson. Turner was out of his vehicle, with the driver's door open, as the officer approached him and explained that the officer was initiating a traffic stop for the traffic offense. After Turner gave the officer his driver's license, a records check revealed to the officer that Turner had a prior conviction for cultivation of marijuana. The undercover officer arrived on the scene, and both officers testified that they were able to smell the scent of raw marijuana from the open door of Turner's vehicle. Based on the officers' suspicion that there were drugs in the car, they searched the vehicle and found a small baggie of raw marijuana in the console of the front seat. They also found three live marijuana starter plants located inside an unsealed box in the back seat of Turner's car. They found another box on the floor of the back-seat area, which contained equipment for the cultivation of marijuana.

{¶ 4} Based on the discovery of the cultivation supplies in the car, the officers decided to search Turner's house on the suspicion that he was engaged in the cultivation of marijuana. The officer who first approached the house testified that when he knocked on the front door, Turner's girlfriend opened the door, and he immediately detected the smell of raw marijuana from the interior of the home. He also saw on the floor, inside the house, near the front door a large Ziploc type plastic bag, containing several smaller Ziplock type bags, which he believed were the type used to transport marijuana, but he did not observe any contraband inside the bags. Neither Turner nor his girlfriend consented to a search of the house, so a call was made to another officer to obtain a search warrant, and for additional officers to help with the search. While waiting for the search warrant, the officers on the scene conducted a protective search of the interior of Turner's house, for officer safety and to prevent the destruction of evidence. During the

protective search, the officers saw, in plain sight, marijuana growing in the house.

{¶ 5} Approximately one hour after conducting the protective search, the officers conducted another search of Turner's home, based on a search warrant. The affidavit used to obtain the search warrant avers that Turner was stopped by one officer after another officer observed a traffic offense. The affidavit explains that the officer followed Turner and made the stop after Turner turned into the driveway of his own residence. Immediately upon approaching Turner's vehicle the officer smelled an odor of raw marijuana emanating from the interior of Turner's vehicle. The odor was the basis of a probable cause search of the vehicle, which resulted in the finding of several small marijuana starter plants. The affidavit for the search warrant also avers that when the officer approached Turner's residence and his girlfriend opened the front door, the officer immediately smelled the odor of raw marijuana and could see bags associated with the packaging of marijuana. The affidavit includes a statement that Turner was convicted of cultivating marijuana in 2007. The affidavit did not include any reference to the finding of cultivation equipment in Turner's vehicle, the baggie of raw marijuana found in the console of the car, or anything observed during the protective sweep of the home.

{¶ 6} Based on the second search of Turner's home, the inventory of items seized lists a Glock 23 (firearm) with magazines and rounds of ammunition, marijuana seeds, live marijuana plants, scales, marijuana paraphernalia, dried and processed marijuana and hydroponic magazines. The police also seized from Turner's person a bag of marijuana, a cell phone and $5,614 cash.

{¶ 7} The affidavit used to obtain the search warrant and the inventory of items

seized was admitted into evidence at the suppression hearing, but the facts contained therein were not identified or discussed by the trial court in its ruling on the motion to suppress.

## II. The Course of Proceedings

{¶ 8} Turner was indicted on one count of Possession of a Controlled Substance, a fifth degree felony in violation of R.C. 2925.11(A); one count of Cultivating Marijuana, a fifth degree felony in violation of R.C. 2925.04, and one count of Having Weapons Under Disability, a third degree felony, in violation of R.C. 2923.13(A)(3). He moved to suppress the evidence. The trial court issued a written decision overruling the motion to suppress, finding the officers' testimony credible, which supported a reasonable suspicion that Turner had committed a traffic offense, and that the officer detected the smell of raw marijuana when he approached the car, which justified a search of the vehicle. The trial court further concluded that the issuance of the search warrant was based on probable cause, because there was a fair probability that evidence of a crime would be found in the place to be searched.

{¶ 9} Following the overruling of his motion to suppress, Turner pled no contest, and was sentenced to community control sanctions, and a mandatory fine of $5,000. From his conviction and sentence, Turner appeals.

## III. Standard of Review

{¶ 10} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier

of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13 quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* The application of the law to the trial court's findings of fact is subject to a de novo standard of review. *State v. Gordon*, 5th Dist. Fairfield No. 14-CA-13, 2014-Ohio-5027, ¶ 14, citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed. 2d 911 (1996).

### IV. The Trial Court Did Not Err in Overruling Turner's Motion to Suppress

{¶ 11} Turner's sole assignment of error on appeal states:

THE TRIAL COURT ERRED BY OVERULING THE MOTION TO SUPPRESS PROFERRED BY DEFENDANT-APPELLANT.

{¶ 12} Turner raises two separate issues in his contention that the trial court erred by overruling his motion to suppress. First, Turner contends that the trial court erred in finding that the officers had a reasonable suspicion of criminal activity to warrant a traffic stop. Secondly, Turner contends that the trial court erred by finding that probable cause existed for the issuance of a search warrant.

{¶ 13} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or

temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991). "A police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*." *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶¶ 15-17, citing *State v. Stewart,* 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 13; *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996).

{¶ 14} Based on the findings made by the trial court, that the officer on the scene had observed Turner driving too close to the vehicle in front of him, we conclude that the officer had a reasonable suspicion that Turner was committing a traffic offense when the officer made the stop. Since the officer's decision to stop Turner for a criminal violation was prompted by a reasonable and articulable suspicion, the stop was constitutionally valid. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204, ¶ 23.

{¶ 15} Because Turner has not challenged the court's determination that the officer was credible when he testified that he detected the odor of raw marijuana or the court's conclusion that the odor gave the officer probable cause to search the car, we

need not address that issue on appeal. *See* App.R. 16(A)(7). We only address Turner's argument that the court should have suppressed the results of the vehicle search because the search came after an unreasonable traffic stop. Since the stop was constitutionally valid, based on a reasonable articulable suspicion of a traffic offense, we conclude that the first issue raised by Turner in his first assignment of error does not provide grounds to suppress the evidence obtained from the search.

{¶ 16} Turner has raised the issue of whether the averments in the affidavit used to obtain the search warrant were sufficient to constitute probable cause. While we must give deference to the court's factual findings, we note that the trial court made no factual findings with respect to the contents of the search warrant. Since the affidavit was entered as an exhibit at the suppression hearing, and made part of the record, we can view its contents to reach an independent conclusion whether its averments are sufficient to constitute probable cause.

{¶ 17} We have questioned whether sufficient probable cause exists for the issuance of a search warrant of a suspect's home following the discovery of an individual's possession of contraband during a traffic stop without some evidentiary link between the drugs in the car and the suspected drug activity in the suspect's home. *State v. Cole*, 2d Dist. Montgomery No. 23508, 2009-Ohio-6131. *See also State v. Perez*, 2015-Ohio-1753, 32 N.E. 3d 1010 (2d Dist.). Although we found in *Cole* that probable cause to issue a search warrant for an individual's home was not present based solely on the individual's possession of drugs or other evidence of drug trafficking, we found that suppression of the evidence was not warranted based on the "good faith exception." *Cole* at ¶ 30. In the case before us, we need not address the good-faith exception, because we conclude that

probable cause did exist based on the facts contained in the affidavit. The averments in the affidavit did present a sufficient evidentiary link between the marijuana plants found in Turner's car and a suspicion of drug activity in Turner's home, because he drove the marijuana plants to his home, and had a history of being convicted of cultivation of marijuana. Based on this combination of facts, the trial court properly concluded that there was a reasonable probability that evidence of drug activity could be found in Turner's home.

{¶ 18}  Accordingly, Turner's sole assignment of error is overruled.

## V. Conclusion

{¶ 19}  Turner's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurring:

{¶ 20} On this record, I agree with the majority's resolution of this case.   However, I cannot recall a case where the *vehicle* search was conducted as a result of the police detecting the odor of raw, i.e., unburnt marijuana in less than significant quantity.

{¶ 21} The record is not fully developed on this point, e.g., the size of the starter plants in a box in the rear of the vehicle is not established; the quantity of the marijuana recovered from a sealed baggie in the front console area of the vehicle is not in the record, and most importantly, the testimony that a relatively small quantity of raw marijuana emanates an odor was not effectively disputed.

{¶ 22} The trial court accepted the officer's testimony that the unburnt, raw marijuana had a noticeable smell. Thus, we must defer to the trial court on this issue. Nevertheless, whether this is a fact supported by the scientific community is not in this record, and the officer's testimony on this point was largely unchallenged, including his qualifications to detect and discern a distinction between burnt and unburnt marijuana.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Dylan Smearcheck
Robert L. Scott
Hon. Michael Tucker