**[Cite as *State v. Bayman*, 2024-Ohio-5405.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-31 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-00074 |
| | : | |
| JEREMIAH BAYMAN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 15, 2024

. . . . . . . . . . .

ADAM JAMES STOUT, Attorney for Appellant

R. KELLY ORMSBY, III, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Jeremiah Bayman appeals from his conviction in the Darke County Court of Common Pleas on one count of aggravated possession of drugs (methamphetamine), a felony of the second degree.   He claims that the trial court erred in overruling his motion

to suppress, in overruling his motion to dismiss due to destruction of evidence by the State, and in finding him competent without holding a hearing. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} In the early morning hours of June 8, 2021, a deputy with the Darke County Sheriff's Office stopped the vehicle in which Bayman was the rear seat passenger. Neither the driver nor Bayman had a valid driver's license, and the front seat passenger appeared to be impaired. While the three were seated inside the vehicle, the deputy walked his canine partner around the car; the dog alerted to the presence of drugs. After Bayman was removed from the vehicle and prior to being patted down, Bayman indicated that he had a syringe in his pocket. His removal of the syringe exposed a part of plastic bag containing what appeared to be an illegal drug. The bag was later determined to contain approximately 38.33 grams of methamphetamine.

{¶ 3} Due to the COVID-19 pandemic, Bayman was not taken to jail. Because he was not placed under arrest, the cruiser video of the stop was not preserved, and the deputy did not take steps to ensure that it would be.

{¶ 4} On March 24, 2022, Bayman was indicted on one count of aggravated possession of drugs (methamphetamine) in an amount equal to or exceeding five times the bulk amount of 3 grams. Approximately two months later, Bayman filed a pro se motion, asking the court to dismiss the case due to the State's destruction of the cruiser video. He also expressed concerns about his attorney. The next day, the trial court summarily denied the motion to dismiss.

{¶ 5} Over the next several months, Bayman repeatedly filed pro se motions. The motions sought reconsideration of the denial of his motion to dismiss due to the destruction of evidence, the appointment of chemical and forensic experts, a continuance of the trial date, dismissal due to a speedy trial violation, and a bond reduction. Bayman also wrote about the circumstances of his case, claiming that the deputy acted illegally and that he was "set up."

{¶ 6} On July 27, 2022, defense counsel filed a joint motion to suppress and motion to dismiss due to destruction of exculpatory evidence. The trial court set a hearing on counsel's motion for August 18, 2022. In September 2022, the trial court denied the motion to suppress, the motion to dismiss due to destruction of evidence, and the motion to dismiss on speedy trial grounds.

{¶ 7} At some point, defense counsel orally notified the trial court that a motion related to Bayman's competency was forthcoming. In response to that representation, on October 18, 2022, the trial court ordered the sheriff's office to provide all records from corrections staff regarding Bayman's behavior since April 15, 2022, and all Bayman's medical, mental, dental, prescription, and other records related to his care during his incarceration. No written motion appears to have been filed.

{¶ 8} Nevertheless, on December 7, 2022, in an entry deciding several pending motions, the trial court summarily denied a request for a forensic examination to analyze Bayman's competency. The court stated that it had "considered the records from the Darke County Jail regarding his behavior and treatment. There are not facts that indicate any competency problems. While his behavior at times has been non-compliant or

unruly, such actions appear to be conscious behavior instead of an indication of competency issues."

{¶ 9} The matter proceeded to a jury trial on December 13, 2022. The jury found Bayman guilty of possession of drugs and determined that the amount involved was 38.33 grams of methamphetamine. The trial court sentenced Bayman to a minimum of two years to a maximum of three years in prison and ordered him to pay certain fees and costs.

{¶ 10} Bayman did not immediately appeal his conviction. However, in January 2024, we granted his motion for leave to file a delayed appeal. Bayman now raises three assignments of error.

## II. Motion to Suppress

{¶ 11} In his first assignment of error, Bayman claims that the trial court erred in failing to suppress evidence from the June 8, 2021 traffic stop.

{¶ 12} An appeal from a ruling on a motion to suppress presents a mixed question of fact and law. *State v. Ojezua*, 2016-Ohio-2659, ¶ 15 (2d Dist.). When considering a motion to suppress, the trial court takes on the role of trier of fact and is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Turner*, 2015-Ohio-4612, ¶ 10 (2d Dist.). As a result, we must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, quoting *State v. Koon*, 2015-Ohio-1326, ¶ 13 (2d Dist.). The trial court's application

of law to the findings of fact is subject to a de novo standard of review. *State v. Shepherd*, 2021-Ohio-4230, ¶ 10 (2d Dist.).

### A. Evidence and Trial Court's Decision

{¶ 13} Deputy Colton Magel of the Darke County Sheriff's Office was the sole witness at the suppression hearing. His testimony established the following facts.

{¶ 14} On June 8, 2021, Deputy Magel was working road patrol with his canine partner, Bear. Shortly before 2:00 a.m., he was parked near the intersection of State Route 49 and Delisle Fourman Road when he saw a vehicle containing two women heading northbound on State Route 49. On a hunch, Deputy Magel decided to follow the vehicle. When he ran the license plate, he learned that the registered owner had an active warrant.

{¶ 15} Magel initiated an investigatory stop, and another deputy, Deputy Mullins, arrived soon after as backup. When Deputy Magel approached the vehicle, he saw that it contained three individuals: the two women in the front seats and Bayman in the rear driver's-side seat. Bayman appeared to be asleep, but he passed along his identification when Magel requested it. Magel testified that Bayman then "closed his eyes again and just ignored my presence." In contrast, the driver appeared to be "pretty nervous," and Magel initially thought she might be lying about her identity. The front seat passenger "was possibly under the influence of something" and had very small pupils. They told Magel that they had gone to look at a car in Phillipsburg.

{¶ 16} Upon running the individuals' identifications, Deputy Magel learned that the driver and Bayman's driver's licenses were suspended. The dispatcher also told Magel

that they had "a prior narcotics history." Although the front seat passenger had a valid license, Magel did not believe she was capable of driving.

{¶ 17} Approximately 15 minutes after initiating the stop, Deputy Magel walked Bear around the vehicle with the passengers still inside it. Bear alerted to the odor of illegal narcotics at the driver's front door. Magel put Bear back in his cruiser and then had Bayman exit the vehicle and stand in front of his cruiser. The deputy testified that, based on Bear's alert, he intended to do a "clothed patted search" for contraband by patting down Bayman outside his clothing.

{¶ 18} Deputy Magel asked Bayman if he (Bayman) had anything that would poke, stick, or hurt him (the deputy). Bayman admitted that he had a syringe in his pants and was unsure whether it had a cap. At the deputy's request, Bayman removed the syringe from his pocket and placed it on the hood of the cruiser. When he did so, approximately one inch to an inch and a half of a clear plastic baggie was also exposed. Based on his training and experience, the deputy recognized the contents as illegal drugs. Magel thought he even said, "There's your drugs." He placed Bayman in handcuffs and removed the bag from Bayman's pants. Deputy Mullins read Bayman his *Miranda* rights. Bayman said that the drugs were not his and that he was holding them for someone else. Upon questioning, the women did not seem to know anything about the drugs.

{¶ 19} Due to COVID-19 protocols, Bayman was not taken to jail. The handcuffs were removed, and Deputy Magel helped the three individuals push the car across the street. Because none was able to drive, the three walked to a nearby gas station and waited for someone to pick them up.

{¶ 20} The trial court found that the evidence and Bayman's statements during the encounter were admissible. First, it concluded that the outstanding warrant for the vehicle's owner constituted probable cause for the traffic stop of the vehicle in which Bayman had been a passenger. Second, it concluded that the stop had not been unreasonably prolonged. The court reasoned:

> After determining that the owner of the vehicle was not the driver and after further determining no one in the vehicle was subject to an arrest warrant, Dep. Magel was stuck with the unenviable problem of what to do with a motor vehicle that could not be driven from that point. As such, an extended delay would be expected and necessary. This delay therefore permitted time for a free-air search by K-9 Bear; there was no unreasonable delay of the traffic stop, since no driver was capable of driving the vehicle from the scene.

{¶ 21} Third, the trial court found that the alert by Bear justified the continued detention of the vehicle's occupants, and removing the passengers from the vehicle was both reasonable and necessary to conduct the search of the vehicle. The court continued: "This lawful removal of the Defendant from the vehicle led to the appropriate *Terry* pat down for discovery of weapons and officer safety purposes. Seizure of the syringe and observation of the bag – a typical drug paraphernalia item especially when accompanied by a hidden syringe – were not constitutionally deficient." The court thus determined the suppression of the evidence was not warranted.

{¶ 22} Finally, the trial court found that Deputy Magel's inquiry prior to the pat down

fit squarely within the public safety exception. Thus, Bayman's statements preceding the pat down were not made in violation of *Miranda*.

**B. Review of Suppression Ruling**

**{¶ 23}** The Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Orr*, 91 Ohio St.3d 389, 391 (2001). "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Whether a stop and search is reasonable under the Fourth Amendment depends upon the particular facts and circumstances, viewed objectively by examining the totality of the circumstances. *See State v. Leak*, 2016-Ohio-154, ¶ 14.

**{¶ 24}** A traffic stop is a seizure under the Fourth Amendment, and like all seizures, it must be justified at its inception. *E.g.*, *Kansas v. Glover*, 589 U.S. 376, 386 (2020). Police officers may briefly stop and temporarily detain individuals to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity has occurred, is occurring, or is about to occur. *Terry*; *State v. Mays*, 2008-Ohio-4539, ¶ 7-8; *State v. Laster*, 2018-Ohio-3601, ¶ 49 (2d Dist.). When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver. *State v. Brown*, 2004-Ohio-4058, ¶ 14 (2d Dist.).

**{¶ 25}** Here, Deputy Magel stopped the vehicle in which Bayman was a passenger based on a report that the registered owner of the vehicle was subject to an active warrant. "Such a stop is reasonable as long as 'the officer lacks information negating an

inference that the owner is the driver of the vehicle.' " *State v. Dunlap*, 2024-Ohio-4821, ¶ 17 (a stop based on report that the owner had a suspended license was reasonable), quoting *Glover* at 378. Magel initially saw two women in the vehicle; no description of the registered owner was provided. Consequently, there is no evidence that Deputy Magel possessed information negating an inference that the owner was the driver. With the information before us, the deputy had a reasonable suspicion that the registered owner was driving to justify stopping the vehicle. Bayman agrees that the stop was lawful.

{¶ 26} "Law enforcement officers may detain the driver and passengers only for the time necessary to complete the reason for the stop." *Kettering v. Maston*, 2018-Ohio-1948, ¶ 17 (2d Dist.); *see Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *State v. Cook*, 65 Ohio St.3d 516, 521 (1992). The reasonableness of the detention "depends on what the police in fact do," and the officer's diligence is measured "by noting what the officer actually did and how he did it." *State v. Hall*, 2017-Ohio-2682, ¶ 13 (2d Dist.), quoting *Rodriguez* at 357.

{¶ 27} "[I]t is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 187 (2004). During a brief investigatory stop, "an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants, often called a 'field investigation.' " *State v. Millerton*, 2015-Ohio-34, ¶ 23 (2d Dist.). An officer is entitled to ask questions to confirm or dispel his or her suspicions that criminal activity occurred. *Id.* at ¶ 23. "[A]n officer who has properly

executed a traffic stop may make ordinary inquiries necessary to complete the mission of the traffic stop – including confirming that the driver has a valid driver's license." *Dunlap* at ¶ 2, citing *Rodriguez* at 355; *see Maston* at ¶ 17. When a lawfully stopped vehicle contains passengers, the police also may request and obtain identification from a passenger. *State v. Haynes*, 2018-Ohio-607, ¶ 12 (2d Dist.).

**{¶ 28}** A drug dog sniff does not constitute a "search" under the Fourth Amendment. *State v. Cantu*, 2024-Ohio-3211, ¶ 29 (2d Dist.). A police officer need not have a reasonable suspicion that a vehicle contains contraband prior to summoning a canine drug unit or conducting a canine free air sniff. *State v. Thomas*, 2009-Ohio-3520, ¶ 15 (2d Dist.). However, "an officer may not prolong a traffic stop to perform a drug sniff even if the 'overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances.' " *Hall* at ¶ 13, quoting *Rodriguez* at 357.

**{¶ 29}** In this case, Bayman does not claim that Deputy Magel acted unlawfully when he asked the vehicle's occupants for their identification, nor does he argue that the deputy acted improperly when he spoke with the occupants before the check of their identifications was completed. Rather, Bayman claims that the deputy's reasonable suspicion ended after the officer determined the status of the driver's and the two passengers' driver's licenses. He argues that once the deputy learned that no one was subject to an outstanding warrant, the deputy could not extend the seizure.

**{¶ 30}** Although Deputy Magel did not point to the driver's lack of a valid license, the record establishes that, upon learning that the driver's license was suspended, the deputy had reasonable suspicion to detain the driver for the offense of driving under

suspension. *See generally* R.C. 4510.11 to 4511.12. Deputy Magel testified that none of the occupants could lawfully drive away in the vehicle, either due to the lack of a valid license (the driver and Bayman) or apparent intoxication (the front seat passenger). Although there was no testimony that the deputy intended to cite the driver, the deputy nevertheless needed to decide what to do with the vehicle.

{¶ 31} Moreover, the discovery that the driver had a suspended license allowed Deputy Magel to detain the vehicle's occupants to investigate additional suspicions of criminal activity. *See State v. Hale*, 2024-Ohio-4866, ¶ 24. When asked what information created a reasonable suspicion of criminal activity to justify the occupants' continued detention, Deputy Magel cited the occupants' prior drug history, the explanation of what they had been doing, and their behavior – the driver's nervousness, the passenger's appearing to be under the influence, and Bayman's acting like he was asleep. Deputy Magel asserted that the totality of the circumstances created a reasonable suspicion of additional criminal activity.

{¶ 32} At this juncture, Deputy Magel walked his canine around the vehicle. Magel's actions did not delay the departure of the vehicle, as none of the occupants could drive away with it. Although Bayman and the others were required to remain in the car while Deputy Magel walked his dog around the vehicle, this brief delay did not unreasonably prolong the stop of the driver and passengers. Thus, the detention did not violate the Fourth Amendment.

{¶ 33} To be sure, "[i]f a trained canine alerts to the odor of drugs from a lawfully stopped and detained vehicle, an officer has probable cause to search the vehicle for

contraband." *State v. Boyce*, 2020-Ohio-3573, ¶ 73 (2d Dist.). The facts here raise an interesting question about whether the alert also created probable cause to search the occupants of the vehicle, but that issue is not before us. Bayman's argument is directed to the length of his detention before the dog sniff, not what occurred afterward. We decline to address issues that have not been raised.

**{¶ 34}** Bayman's first assignment of error is overruled.

### III. Destruction of Evidence

**{¶ 35}** Bayman's second assignment of error claims that the trial court erred in denying his motion to dismiss when the State had failed to preserve evidence.

**{¶ 36}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence. *State v. Glowney*, 2019-Ohio-3390, ¶ 45 (2d Dist.). Evidence is "materially exculpatory" if it (1) possesses "an exculpatory value that was apparent before the evidence was destroyed" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *State v. Powell*, 2012-Ohio-2577, ¶ 74.

**{¶ 37}** "In contrast, evidence is not materially exculpatory if it is merely potentially useful. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith." *State v. Cox*, 2013-Ohio-4941, ¶ 88 (2d Dist.). "The

term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " (Citations omitted.) *Powell* at ¶ 81; *State v. Carr*, 2020-Ohio-1523, ¶ 47 (2d Dist.). Under current case law, the defendant bears the burden of showing that the evidence in question was materially exculpatory, not merely potentially useful. *Id.* at ¶ 74; *Carr* at ¶ 35.

{¶ 38} In this case, the missing evidence is the cruiser video of the investigatory stop. Deputy Magel testified that a recording was made, but it was no longer available. He explained that, typically, when an arrest was made, a sergeant or supervisor would burn a DVD of the recording and save it for court. Magel did not know how to download the video himself and had never received training on how to do it.

{¶ 39} Due to COVID protocols, Bayman was not arrested and taken to jail, so the regular procedure was not employed. Deputy Magel testified that there was a button in "Watch Guard" to prevent the recording being purged, but he was unaware of it at the time. As a result, the recording had been purged according to a set schedule. He stated that he had not destroyed the video; rather, it had not been preserved.

{¶ 40} No evidence was presented at the hearing to demonstrate that the missing cruiser video was materially exculpatory, as opposed to potentially useful. Nor was there evidence that Deputy Magel acted in bad faith when he failed to ensure that the cruiser video would be preserved. As we stated in *Carr*, "[t]he most that could be said is the police may have been negligent. That simply is not sufficient to find a violation of due process warranting dismissal." *Carr*, 2020-Ohio-1523, at ¶ 53.

{¶ 41} Bayman's second assignment of error is overruled.

### IV. Competency Evaluation and Hearing

{¶ 42} In his third assignment of error, Bayman claims that the trial court erred in making a competency determination without referring him to an expert or holding a competency hearing.

{¶ 43} Under fundamental principles of due process, a criminal defendant who is legally incompetent may not be tried. *E.g., State v. Thomas*, 2002-Ohio-6624, ¶ 36. "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' " *State v. Smith*, 89 Ohio St.3d 323, 329 (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

{¶ 44} R.C. 2945.37(A) defines incompetency consistent with the constitutional standards. The supreme court has made clear that "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110 (1986).

{¶ 45} "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). However, the trial court, prosecutor, or defense counsel "may raise the issue of the defendant's competence to stand trial." R.C. 2945.37(B). If the issue is raised, the trial court may order one or more evaluations of the defendant's present mental condition. R.C. 2945.371(A). In addition, both the prosecutor and defense counsel may submit

evidence on the issue of the defendant's competence to stand trial. R.C. 2945.37(E). If the issue is raised before trial has commenced, the trial court is required to hold a hearing on the issue. *Id.*; *State v. Lawson*, 2021-Ohio-3566, ¶ 66.

{¶ 46} A motion by defense counsel requesting a competency evaluation is sufficient to raise the issue of the defendant's competency, even if the motion provides no bases for counsel's request. *State v. Williams*, 2023-Ohio-965, ¶ 26 (2d Dist.). Because Bayman's competency was raised prior to trial, the trial court was required to hold a competency hearing, and it had the discretion to order Bayman to undergo an evaluation prior to the hearing. *See id.*

{¶ 47} However, a trial court's failure to hold a competency hearing is not necessarily reversible error. *State v. Mills*, 2023-Ohio-4716, ¶ 14, citing *Bock*, 28 Ohio St.3d at 110. Rather, "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *Bock* at 110. When determining whether the failure to hold a competency hearing is harmless, courts must consider "the totality of the evidence," including "both evidence of incompetency and evidence of competency." *Mills* at ¶ 21.

{¶ 48} In this case, upon being informed that a competency motion was forthcoming, the trial court ordered the Darke County Sheriff's Office to provide it (1) Bayman's medical, mental, dental, prescription and other records, involving all aspects of his care, since his incarceration at the jail on or about April 15, 2022, and (2) all records from jail corrections staff regarding Bayman's conduct since April 15, 2022. Entry Ordering Medical Information and Records (Oct. 18, 2022.) The court indicated that it

would share the records with defense counsel and would later determine whether copies should be provided to the State.

{¶ 49} On December 7, 2022, a week before the scheduled trial date, the trial court overruled the request for a forensic examination of Bayman's competency. The court stated that it had reviewed the jail records and found "no facts that indicate any competency problems." It noted that while Bayman's behavior had been, at times, "non-compliant or unruly," his actions appeared to be conscious behavior and not an indication of incompetency. The trial court did not hold a hearing on Bayman's competency, and the matter proceeded to trial as scheduled.

{¶ 50} It was within the trial court's discretion not to order a competency evaluation, but it erred in failing to hold a hearing on Bayman's competency. Nevertheless, on this record, we conclude that the error was harmless as nothing in the record suggests that Bayman was incompetent.

{¶ 51} Bayman appeared by video for his arraignment on April 19, 2022. During that proceeding, Bayman indicated that he had received the indictment and believed it charged "a felony 2." After the court explained that the charge involved possession of approximately 38 grams of methamphetamine on June 8, 2021, and the penalty for the offense, Bayman expressed that he understood and had no questions. When asked what he wanted to do about an attorney, Bayman told the court, "I think I will need the State to appoint me a lawyer at this time." When asked about his lack of recent employment, Bayman said that he had come from a rehab facility. He continued: "I just came from a (inaudible) meeting, and they said there is a recovery house here in town.

And I don't know, that would probably be the best option for me as far as bond, if you give me a bond." Bayman discussed his indigence, his history of substance abuse and recovery efforts, and a pending case in another county. Nothing in Bayman's dialog with the court suggested that he was incompetent to stand trial.

{¶ 52} Bayman also appeared by video for a pretrial conference on May 19, 2022. At the end of the conference, Bayman asked the court about receiving a conditional own recognizance bond. Following that pretrial conference, Bayman filed several pro se motions. He sought, among other things, dismissal of the charge due to the destruction of the cruiser video, production of the deputy's CAD report or a full dispatch log related to his incident, the appointment of chemical and forensic experts, a continuance because he was not ready for trial, dismissal of the charge on speedy trial grounds, and a bond modification. While some of Bayman's motions were repetitive, the motions were concisely and cogently written, and they demonstrated an understanding of the legal issues and processes related to his case.

{¶ 53} The record does not reveal what prompted defense counsel to notify the trial court that he intended to file a competency motion. The jail records provided by the Darke County Sheriff's Office indicated that Bayman had ongoing physical and mental health challenges, and that he had a couple behavioral issues while incarcerated. In November 2022 (after defense counsel raised the issue of Bayman's competency), Bayman complained of psychotic symptoms and was briefly on suicide watch. The jail records further reflected, however, that Bayman had a history of dishonesty and manipulative behavior. Nothing in the jail records indicated that Bayman was

incompetent to stand trial.

{¶ 54} We further note that Bayman testified on his own behalf at trial, asserting that he was unaware of the drugs until they were pulled from his pants and that one of the other occupants of the car had placed the drugs there while he was asleep. In addition, at the conclusion of the trial, Bayman also acknowledged that he had conferred with his attorney and had participated in and understood the trial process.

{¶ 55} With the record before us, any error by the trial court in failing to hold a competency hearing before trial was harmless. Bayman's third assignment of error is overruled.

## V. Conclusion

{¶ 56} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.