[Cite as *State v. Bayman*, 2025-Ohio-4600.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | :    C.A. No. 2023-CA-31 |
|      Appellee | : |
| | :    Trial Court Case No. 22-CR-00074 |
| v. | : |
| | :    (Criminal Appeal from Common Pleas |
| JEREMIAH BAYMAN | :    Court) |
| | : |
|      Appellant | :    **FINAL JUDGMENT ENTRY &** |
| | :    **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 3, 2025, our prior opinion and final judgment in this appeal, issued on November 15, 2024, are vacated, as required by App.R. 26(B)(9), to the extent that they concluded that the trial court did not err in overruling Bayman's motion to suppress and affirmed his conviction. The trial court's judgment is reversed and remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, PRESIDING JUDGE

LEWIS, J., and HUFFMAN, J., concur.

**OPINION**
DARKE C.A. No. 2023-CA-31

RUSSELL PATTERSON, Attorney for Appellant
JEANNINE E. MYERS Attorney for Appellee

EPLEY, P.J.

{¶ 1} In this reopened appeal, Jeremiah Bayman challenges his conviction in the Darke County Court of Common Pleas on one count of aggravated possession of drugs (methamphetamine), a felony of the second degree. He claims that the trial court erred by overruling his motion to suppress based on its conclusion that he was lawfully searched. Bayman further claims that his appellate counsel was ineffective for not challenging this conclusion and the court's underlying factual findings. The State concedes error, and we agree.

{¶ 2} For the following reasons, our prior opinion and final judgment in this appeal are vacated to the extent that they concluded that the trial court did not err in overruling Bayman's motion to suppress and affirmed his conviction. The trial court's judgment is reversed, and this matter is remanded for further proceedings.

**I. Facts and Procedural History**

{¶ 3} In the early morning hours of June 8, 2021, Deputy Colton Magel of the Darke County Sheriff's Office stopped a vehicle based on information that the registered owner had an active warrant. When he approached the vehicle, Magel saw that it contained three individuals: two women in the front seats and Bayman in the rear driver's-side seat. Neither the driver nor Bayman had a valid driver's license, and the front seat passenger appeared to be impaired. The registered owner was not in the vehicle. Another deputy, Deputy Mullins, arrived as backup soon after the stop began.

{¶ 4} While the three occupants remained seated inside the vehicle, Deputy Magel walked his canine partner, Bear, around the car; the dog alerted to the odor of illegal narcotics at the driver's front door. Magel put Bear back in his cruiser and then had Bayman exit the vehicle and stand in front of his cruiser. The deputy testified that, based on Bear's alert, he intended to do a "clothed patted search" for contraband.

{¶ 5} Deputy Magel asked Bayman if he (Bayman) had anything that would poke, stick, or hurt him (the deputy). Bayman admitted that he had a syringe in his pants and was unsure whether it had a cap. At the deputy's request, Bayman removed the syringe from his pocket and placed it on the hood of the cruiser. When he did so, he exposed approximately one to one and a half inches of a clear plastic baggie. Based on his training and experience, the deputy recognized the baggie's contents as illegal drugs. Deputy Magel thought he even said, "There's your drugs." He placed Bayman in handcuffs and removed the baggie from Bayman's pants. Deputy Mullins read Bayman his *Miranda* rights. Bayman said that the drugs were not his and that he was holding them for someone else. The baggie was later determined to contain approximately 38.33 grams of methamphetamine.

{¶ 6} On March 24, 2022, Bayman was indicted on one count of aggravated possession of drugs (methamphetamine) in an amount equal to or exceeding five times the bulk amount of three grams. Of relevance to this reopened appeal, Bayman moved to suppress the State's evidence against him. After a hearing, the trial court overruled the motion. The court reasoned, in part:

> In this case, the alert by K-9 Bear was the initial articulable justification for continued detention. Removing the passengers from the vehicle was reasonable and necessary to conduct the search of the vehicle. This lawful removal of the Defendant from the vehicle led to the appropriate *Terry* pat

down for discovery of weapons and officer safety purposes. Seizure of the syringe and observation of the bag – a typical drug paraphernalia item especially when accompanied by a hidden syringe – were not constitutionally deficient. There is no constitutional violation for which suppression of evidence would be a necessary remedy.

A jury subsequently found Bayman guilty of possession of drugs and determined that the amount involved was 38.33 grams of methamphetamine. The trial court sentenced Bayman to a minimum of two years to a maximum of three years in prison and ordered him to pay certain fees and costs.

{¶ 7} In a delayed appeal, Bayman raised three assignments of error, the first of which claimed that the trial court had erred in failing to suppress evidence from the June 8, 2021 traffic stop. He argued that the deputy's reasonable suspicion ended after the officer determined the status of the driver's and the two passengers' driver's licenses. Bayman asserted that once the deputy learned that no one was subject to an outstanding warrant, the deputy could not extend the seizure.

{¶ 8} On review, we affirmed the trial court's denial of the motion to suppress. We concluded that based on evidence before us, Deputy Magel had a reasonable suspicion that the registered owner was driving to justify stopping the vehicle. Bayman agreed that the stop was lawful, and he did not claim on appeal that Deputy Magel acted unlawfully when he asked the vehicle's occupants for their identification or that the deputy acted improperly when he spoke with the occupants before the check of their identifications was completed.

{¶ 9} Turning to the duration of the stop, we held that the detention was not unconstitutionally prolonged. We stated:

Although Deputy Magel did not point to the driver's lack of a valid license, the record establishes that, upon learning that the driver's license was suspended, the deputy had reasonable suspicion to detain the driver for the offense of driving under suspension. *See generally* R.C. 4510.11 to 4511.12. Deputy Magel testified that none of the occupants could lawfully drive away in the vehicle, either due to the lack of a valid license (the driver and Bayman) or apparent intoxication (the front seat passenger). Although there was no testimony that the deputy intended to cite the driver, the deputy nevertheless needed to decide what to do with the vehicle.

Moreover, the discovery that the driver had a suspended license allowed Deputy Magel to detain the vehicle's occupants to investigate additional suspicions of criminal activity. *See State v. Hale*, 2024-Ohio-4866, ¶ 24. When asked what information created a reasonable suspicion of criminal activity to justify the occupants' continued detention, Deputy Magel cited the occupants' prior drug history, the explanation of what they had been doing, and their behavior – the driver's nervousness, the passenger's appearing to be under the influence, and Bayman's acting like he was asleep. Deputy Magel asserted that the totality of the circumstances created a reasonable suspicion of additional criminal activity.

At this juncture, Deputy Magel walked his canine around the vehicle. Magel's actions did not delay the departure of the vehicle, as none of the occupants could drive away with it. Although Bayman and the others were required to remain in the car while Deputy Magel walked his dog around the

vehicle, this brief delay did not unreasonably prolong the stop of the driver and passengers. Thus, the detention did not violate the Fourth Amendment.

To be sure, "[i]f a trained canine alerts to the odor of drugs from a lawfully stopped and detained vehicle, an officer has probable cause to search the vehicle for contraband." *State v. Boyce*, 2020-Ohio-3573, ¶ 73 (2d Dist.). The facts here raise an interesting question about whether the alert also created probable cause to search the occupants of the vehicle, but that issue is not before us. Bayman's argument is directed to the length of his detention before the dog sniff, not what occurred afterward. We decline to address issues that have not been raised.

*State v. Bayman*, 2024-Ohio-5405, ¶ 30-33. After overruling all Bayman's assignments of error, we affirmed his conviction.

{¶ 10} Bayman, with new appellate counsel, asked us to reopen his direct appeal to challenge the lawfulness of Deputy Magel's conduct after the dog alert. We granted the application for reopening and ordered additional briefing.

{¶ 11} Bayman now raises two assignments of error. First, he claims that Deputy Magel lacked probable cause to search him, and second, he claims that appellate counsel rendered ineffective assistance by failing to raise this issue. We will address the assignments of error together.

## II. Ineffective Assistance of Appellate Counsel

{¶ 12} In a reopened appeal, the applicant for reopening bears the burden of showing that "prejudicial errors were made in the trial court and that ineffective assistance of appellate counsel in the prior appellate proceedings prevented these errors from being presented effectively to the court of appeals." *State v. Leyh*, 2022-Ohio-292, ¶ 22, quoting 1993 Staff

Notes to App.R. 26(B). Our prior appellate judgment in this case may not be altered unless Bayman establishes "that the direct appeal was meritorious and failed because appellate counsel rendered ineffective assistance under the two-pronged *Strickland* standard." *Id*. at ¶ 24; *see* App.R. 26(B)(9); *State v. Clark*, Slip Opinion No. 2025-Ohio-4410, ¶ 18.

{¶ 13} To establish ineffective assistance of counsel, a defendant must demonstrate both that (1) counsel's conduct was deficient, and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Lloyd*, 2022-Ohio-4259, ¶ 15. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland* at 687; *Lloyd* at ¶ 16. The second prong requires a showing that the errors were serious enough to create a reasonable probability that but for the errors, the outcome of the case would have been different. *Strickland* at 694; *Lloyd* at ¶ 18. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 14} In this case, Bayman argues that the trial court erred in denying his motion to suppress because Deputy Magel lacked probable cause to search him based on the canine alert, and even if probable cause existed, the deputy did not obtain a warrant for a search. If Bayman is correct that the motion to suppress should have been granted, the consequence would be the reversal of his conviction. Accordingly, we focus on whether the trial court erred in overruling Bayman's motion to suppress.

### III. Probable Cause to Search Bayman

{¶ 15} Bayman's first assignment of error claims that "[t]he trial court erred by overruling Mr. Bayman's motion to suppress based on the court's finding that Mr. Bayman was lawfully searched." In support, he raises two issues. First, he asserts that the trial court misstated the record when it found that Deputy Magel performed a *Terry* pat-down. Second,

he contends that Deputy Magel unlawfully conducted a search of his person without probable cause and without either a warrant or an exception to the warrant requirement.

{¶ 16} A key preliminary issue here is the nature of the search that Deputy Magel intended to conduct. In its decision, the trial court found that the deputy asked Bayman to exit the vehicle in preparation for a search of the vehicle and that "[t]his lawful removal of the Defendant from the vehicle led to the appropriate *Terry* pat down for discovery of weapons and officer safety purposes." Bayman makes a strong argument that there is no evidence to support this conclusion.

{¶ 17} A police officer may briefly stop or temporarily detain a person to investigate possible criminal activity if the officer has a reasonable, articulable suspicion that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Mays*, 2008-Ohio-4539, ¶ 7-8. However, "[t]he authority to stop an individual does not necessarily equate to authority to search the individual." (Citations omitted.) *State v. Lovins*, 2010-Ohio-3916, ¶ 12 (2d Dist.). Once a lawful investigatory stop has been made, a police officer may conduct a limited protective search for concealed weapons only if the officer reasonably believes that the suspect may be armed and a danger to the officer or to others. *State v. Evans*, 67 Ohio St.3d 405, 408 (1993). "[T]he protective pat down under *Terry* is limited in scope to its protective purpose and cannot be employed by the searching officer to search for evidence of crime." *State v. Holley*, 2004-Ohio-4264, ¶ 10 (2d Dist.).

{¶ 18} In contrast, a search must be based on probable cause and executed pursuant to either a warrant or an exception to the warrant requirement. *See, e.g., Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). When a person is being searched, exceptions to the warrant requirement include consent and a search incident to a lawful arrest.

{¶ 19} During his direct examination, Deputy Magel indicated that he was going to conduct a "clothed patted search" based on the alert from his canine. Suppression Tr. 14. On cross-examination, defense counsel asked if the search was based on *Terry*; Magel responded that it was "[b]ased off the probable cause of the dog alert." *Id*. at 37. After asking whether the women were searched, defense counsel again sought clarification about the anticipated search of Bayman. When asked whether the clothed patted search was "for weapons or was this a search," Deputy Magel responded, "Contraband." *Id*. at 38-39.

{¶ 20} A few moments later, the prosecutor objected when defense counsel referred to the deputy's planned search of Bayman as a pat down, prompting the following exchange:

[PROSECUTOR:] I am objecting to the characterization. I think the officer said he is searching because the drug dog alerted, so he is looking for drugs. It's not a pat down as we normally think of like in a *Terry* stop or something for weapons. This was a search that I think is based on probable cause for drugs. It wasn't a simple pat down for weapons or something like that.

THE COURT: The pat down, [defense counsel], of the females was like an officer safety pat. The search of the defendant was an evidence search. Would you agree with that?

[DEFENSE COUNSEL:] I would agree with that.

THE COURT: We don't have to stipulate, I think that's what the evidence is.

Suppression Tr. at 40.

{¶ 21} On this record, the trial court erred when it determined that Deputy Magel was going to conduct a *Terry* pat down for officer safety on Bayman. Magel never stated that he intended to conduct a *Terry* pat down for officer safety due to a concern that Bayman was armed and dangerous, nor did he provide evidence that a *Terry* pat down was justified.

Rather, Magel's testimony established – and the State concedes – that he was going to conduct a search for contraband, for which probable cause was required.

{¶ 22} Deputy Magel acknowledged that Bayman admitted to having a syringe in his pocket only after the deputy informed Bayman that he would be searched and asked whether Bayman had anything that could poke or hurt him. The lawfulness of the deputy's question – and the ultimate discovery of the drugs – thus depends on whether his impending search for contraband was lawful.

{¶ 23} We therefore turn to whether Bear's alert at the driver's front door created probable cause to search Bayman for weapons. Although Bayman has not pointed to any binding authority, he has cited cases from other Ohio appellate districts that have held that a canine alert, alone, is not enough to establish probable cause to search a passenger in the vehicle. *E.g., State v. Jones*, 2004-Ohio-7280, ¶ 43 (4th Dist.); *State v. Chapman*, 2019-Ohio-3339, ¶ 60 (7th Dist.); *State v. Dudsak*, 2021-Ohio-3632, ¶ 15 (9th Dist.); *State v. McCorvey*, 2011-Ohio-3627, ¶ 35 (11th Dist.); *State v. Owensby*, 2022-Ohio-1702, ¶ 36 (12th Dist.). We have found similar rulings in other jurisdictions. *See, e.g., State v. Wallace*, 372 Md. 137 (2002); *Whitehead v. Commonwealth*, 278 Va. 300 (2009); *State v. Stevens*, 970 N.W.2d 598 (Iowa 2022). The State concedes that the canine alert to the vehicle provided probable cause to search the vehicle only.

{¶ 24} The State identifies one case, *United States v. Anchondo*, 156 F.3d 1043 (10th Cir. 1998), which concluded otherwise. However, the State acknowledges that *Anchondo* has not been adopted by any Ohio court, and in some instances, has been expressly rejected. The State adds: "The State of Ohio does not offer any arguments in persuading this Court to adopt *Anchondo* in light of its overwhelming rejection by Ohio courts and

recognizes the facts in *Anchondo* are not similar to the facts in the current matter." State's Brief, p. 7.

**{¶ 25}** Given the State's concessions, we follow our sister districts and conclude that the deputy lacked probable cause to search Bayman based solely on the K-9 alert, and therefore, the trial court should have granted Bayman's motion to suppress. Concomitantly, we agree with Bayman that his appellate counsel was ineffective with respect to his claim that the trial court erred in denying his motion to suppress. Accordingly, Bayman's assignments of error are sustained.

### IV. Conclusion

**{¶ 26}** Having sustained Bayman's assignments of error and his App.R. 26(B) claim, our prior opinion and final judgment in this appeal, issued on November 15, 2024, are vacated, as required by App.R. 26(B)(9), to the extent that they concluded that the trial court did not err in overruling Bayton's motion to suppress and affirmed his conviction. The trial court's judgment is reversed, and this matter is remanded for further proceedings.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.